UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| W. RYCKMAN CAPLAN | CIVIL ACTION |
| VERSUS | NO. 10-1996 |
| OCHSNER CLINIC, L.L.C., ET AL. | SECTION "L" (2) |

## ORDER & REASONS

Before the Court is Defendants' Motion for Summary Judgment (Rec. Doc. 29). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.   BACKGROUND**

This breach of contract suit arises out of an employment agreement between the Plaintiff, Dr. W. Ryckman Caplan, and Ochsner Clinic, LLC, Ochsner Health System, and Ochsner Clinic Foundation ("Ochsner" or "Defendants"). Plaintiff is an obstetrician/gynecologist. Prior to July 31, 2008, he had a practice with six colleagues at East Jefferson General Hospital. Plaintiff alleges that Ochsner solicited him and his colleagues to move their practice to an Ochsner-affiliated clinic. In connection with those negotiations, Plaintiff alleges that he and his colleagues were guaranteed five years of employment as well as a $30,000 loan which would be forgiven after three years of employment. Plaintiff also completed a "Request for Information" form in early May, 2008 in which he disclosed six malpractice lawsuits in which he had been named a defendant.

Although Ochsner made offers guaranteeing five years of employment to four of Plaintiff's colleagues, the written offer to Plaintiff guaranteed only one year of employment, with

automatic one-year renewals subject to a provision which allowed either Plaintiff or Ochsner to terminate without cause upon 90 days written notice after completion of the first guaranteed year:

> 11.   Term
> The term of this Agreement shall commence on the Commencement Date and shall continue in effect for an initial term of one year (the "Initial Term"). Thereafter, this Agreement shall automatically renew on the same terms and conditions for additional one (1) year terms subject to Section 12.4.
> .....
> 12.4   Termination Without Cause. After the completion of the Initial Term of this Agreement, either Physician or Clinic may terminate this Agreement without cause by giving at least ninety (90) days prior written notice to the other party.  Once given by physician, such ninety (90) days notice shall be irrevocable without the consent of Clinic.  Refusal of Clinic to give such consent shall not be subject to appeal under Section 12.5.

Plaintiff alleges that a representative of Ochsner assured him "not to worry" about the one-year term and that it was strictly a formality because Plaintiff was over sixty-five years old.[1]  Plaintiff signed the offer letter and Professional Services Agreement on May 21, 2008.  His term of employment began on August 1, 2008.

On May 7, 2009, Ochsner sent Plaintiff a letter attempting to provide written notice exercising its option to terminate the employment agreement without cause.  However, because the option to terminate without cause could only be terminated after Plaintiff had completed the full one-year term of the employment agreement, Ochsner sent a second letter on July 17, 2009, terminating Plaintiff's services as of August 1, 2009 but agreeing to pay him for three additional months, through November 1, 2009.  Ochsner also withheld funds from the final salary payments

---

[1]Four of Plaintiff's six colleagues received offers with five-year terms.  The record suggests that the fifth colleague was also over the age of sixty-five and also received a contract with a one-year term.

representing repayment of the $30,000 loan, which was not forgiven because Plaintiff had not worked three full years.

Plaintiff filed suit on July 15, 2010, alleging breach of the employment contract, detrimental reliance on Ochsner's representations of a guaranteed five years employment, and age discrimination. Ochsner answered and counter-claimed, alleging that Plaintiff breached the employment agreement by misrepresenting his malpractice history and performing medical procedures at a different facility while under contract with Ochsner.[2]

## II.   PRESENT MOTION

Defendants now move for summary judgment on Plaintiff's claims as well as their own counter-claims. Defendants argue that they complied fully with the terms of the written contract, and that any additional purported oral representations are unenforceable. Defendants also argue that there is no genuine dispute of material fact that Plaintiff misrepresented his malpractice claims history before receiving and accepting the offer of employment, and that Plaintiff breached the employment agreement by doing outside work.

Plaintiff opposes summary judgment. He argues that he reasonably relied to his detriment on Ochsner's representations that he would be employed for five years and not to worry about the express one-year term in the Professional Services Agreement. He also argues that summary judgment is not warranted on Defendants' counter-claims because they were independently aware of his malpractice history and that because Plaintiff complied with the spirit of the agreement in performing outside work and immediately halted that work upon written

---

[2] Ochsner terminated the employment agreement without cause, and did not cite any of those alleged misrepresentations or breaches as cause for the termination.

notice.

### III.   LAW & ANALYSIS

#### A.   Summary Judgment Standard

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

#### B.   Summary Judgment on Plaintiff's Claims

Defendants argue that Plaintiff's claims for breach of contract, detrimental reliance, and

4

age discrimination all fail.  In opposition, Plaintiff expressly abandons his age discrimination claim.  Plaintiff also characterizes his case as "a claim for damages resulting from [his] justifiable reliance on representations made to him by [Defendants]."  Thus, Plaintiff argues in terms of detrimental reliance and does not argue in terms of a contract that Ochsner allegedly breached.  Because Plaintiff has framed the question as one of detrimental reliance, and because, as will be discussed below, Defendants complied with the express written terms of the contract, the Court will address only the detrimental reliance theory.

> A cause of action for detrimental reliance originates with the Louisiana Civil Code:
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.  Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise.  Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code art. 1967.  "Detrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance."  *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004).  Detrimental reliance "usually functions when no written contract or an unenforceable contract exists between the parties."  *Id.*

As noted above, Plaintiff alleges that Ochsner represented that he would be guaranteed five years of employment, and that in reliance on that representation he moved his practice from East Jefferson General Hospital to Ochsner and convinced his colleagues to do so.  It is unclear to what extent Defendants dispute that any representations of guaranteed employment for five years were made, but any such dispute would of course be a factual issue precluding summary judgment.  Instead, Defendants argue Plaintiff's reliance on any representations contradicted by

5

the language of the contract was unreasonable as a matter of law.

Whether a party reasonably relied on a representation is usually a question of fact. *See id.* But on several occasions the Fifth Circuit has applied Louisiana law and found reliance on extra-contractual representations to be unreasonable as a matter of law because the representations were inconsistent with an unambiguous fully-integrated written contract. *E.g.*, *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 565-66 (5th Cir. 2005); *Bethea*, 376 F.3d at 403-04; *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1329-30 (5th Cir. 1994); *see also Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 571 F. Supp. 2d 728, 735-36 (E.D. La. 2008), *aff'd* 326 F. App'x 321 (5th Cir. 2009).

In *Bethea*, for example, the contract was a medical malpractice insurance policy that provided for free "tail" coverage if an insured doctor retired during the life of the policy. 376 F.3d at 401-02. The insurer later exercised an express non-renewal option in the policy and departed the malpractice insurance market, which prevented policyholders who were not going to retire before the policies expired from taking advantage of the free extended coverage. *See id.* The plaintiffs argued that they relied on a letter and brochures from the insurer which purportedly promised unconditional free extended coverage, regardless of whether the doctor retired during the life of the policy. *See id.* The district court granted a motion to dismiss the detrimental reliance claim and the Fifth Circuit affirmed. The Fifth Circuit held that reliance on the brochures and letter was unreasonable as a matter of law for two reasons. First, the insurance policy unambiguously laid out the terms and "the clarity of the policy and the informality of the letter" made reliance on the letter unreasonable as a matter of law. *See id.* at 405. Second, the policy contained an integration clause that "*also* [made] any reliance unreasonable." *See id.* An

6

integration or merger clause is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." *Black's Law Dictionary* 880, 1079 (9th ed. 2009). Thus, the Fifth Circuit looks to both the presence of an integration clause and the plain language of the contract to determine whether, as a matter of law, reliance on inconsistent representations is unreasonable.

With respect to integration clauses, the Fifth Circuit has never addressed detrimental reliance in a case where the contract lacked such a clause. *See Condrey*, 429 F.3d at 564 ("This is a fully integrated contract."); *Bethea*, 376 F.3d at 405 ("The contract includes an integration clause...."); *Omnitech*, 11 F.3d at 1328 ("The written agreements between the parties include an express integration clause...."); *Bank of Louisiana*, 571 F. Supp. 2d at 736 ("Therefore, the Court concludes that the agreement is fully integrated...."). Here, the offer letter and Professional Services Agreement do not contain an express integration clause or any requirement that changes to the employment agreement be made in writing.[3] But it does contain a waiver clause; Section 22 of the agreement provides:

> Any waiver of any provision hereof shall not be effective unless expressly made in writing executed by the party to be charged. The failure of any party to insist on performance of any of the terms or conditions of this Agreement shall not be construed as a waiver or relinquishment of any rights granted hereunder or of the future performance of any such term, covenant or condition, and the obligations of the parties with respect thereto shall continue in full force and effect.

---

[3] Had they intended to include an integration clause, the parties clearly could have done so. Indeed, the loan agreement entered into as part of the employment contract contained an integration clause: "This Agreement embodies the entire agreement and understanding between the Clinic and the Physician relating to the subject matter hereof and supersedes all prior agreements and understanding between the Clinic and the Physician relating hereto." Loan Agreement at para. 9.

By comparison, in *Bethea* the insurance policy provided that it "'contains all the agreements between you and us concerning this insurance,' and that it 'can only be changed by a [signed] written form included as part of the policy.'" 376 F.3d at 405 (alteration in original). Accordingly, the agreement between Plaintiff and Defendants lacks the sort of integration clause that the Fifth Circuit has consistently held to be one basis for finding reliance to be unreasonable as a matter of law.

That does not necessarily mean that Plaintiff's reliance is a fact question, because the Fifth Circuit has held that inconsistency between a representation and the unambiguous terms of the contract can independently make reliance unreasonable as a matter of law. *See id.*; *see also In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09-MD-2030, 2010 WL 1924719, *14-15 (S.D.N.Y. May 11, 2010). Here, the Professional Services Agreement unambiguously states that the term of employment is one year. Although the term of employment would automatically renew for an additional year if either party took no action, the express language permits either party to terminate the agreement without cause after the initial one-year term. Thus, by its plain and unambiguous language, the Professional Services Agreement did not guarantee Plaintiff five years of employment. Plaintiff alleges that he was assured "not to worry" about the one-year term and that it was only a "formality."

Even taking Plaintiff's version of the facts as true and making all reasonable inferences his favor, Plaintiff was relying on an extracontractual statement directly contradicted by the written agreement he signed. Under the contract, this provision could not be waived except in wiriting. The Court concludes that, in line with the aforementioned Fifth Circuit opinions, Plaintiff's purported reliance in this case was unreasonable as a matter of law. In the absence of

a genuine fact issue regarding the reasonableness of his reliance, Plaintiff's claim for detrimental reliance fails.  Plaintiff articulates no other viable legal theory and Defendants' motion for summary judgment is granted.

**C.     Partial Summary Judgment on Defendants' Counter-Claims**

Defendants also move for summary judgment on their counter-claims against Plaintiff. First, Defendants allege that Plaintiff deliberately misrepresented his malpractice claims history, that they detrimentally relied on that misrepresentation in offering him employment, and that the misrepresentation constitutes fraud that vitiates Defendants' consent to the employment agreement.  Second, Defendants allege that while Plaintiff was employed, he also provided abortion services at a non-Ochsner facility and in so doing breached his employment agreement. Defendants argue that there are no disputes of fact regarding these violations and that the employment agreement is either unenforceable as the product of fraud, or should be dissolved as materially breached, and that they are entitled to damages.

Plaintiff responds that he did not intend to defraud Defendants but only inadvertently omitted some malpractice claims from his disclosure.  Further, Plaintiff responds that Defendants were fully apprised of his malpractice claim history before the term of employment began. Finally, Plaintiff argues that he attempted to comply with good faith and discontinued his extracurricular activities immediately upon notice by Defendants.

These claims are pregnant with disputed facts.  First, with respect to whether Plaintiff defrauded Defendants, fraud requires "the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."  La. Civ. Code art. 1953.  Plaintiff takes the position that his non-disclosure of certain malpractice claims was inadvertent and not

9

intentional. Summary judgment is not appropriate on the fraud counter-claim.

Second, whether Defendants detrimentally relied on the incomplete disclosure of Plaintiff's malpractice history is also the subject of factual dispute. Defendants contend that they relied on an incomplete "Request for Information" regarding malpractice submitted by Plaintiff before offering employment. Plaintiff responds that, although he inadvertently omitted several claims, Defendants were fully apprised of his claims history before his term of employment actually began, and Defendants elected to employ Plaintiff anyway. Detrimental reliance is generally a fact question, *Bethea*, 376 F.3d at 403, and summary judgment on this counter-claim is also inappropriate.

Third, whether Plaintiff's contemporaneous work at Causeway Medical Center breached the contract and warrants dissolution or damages is a fact question. The Agreement limits Plaintiff's ability to provide other professional medical services, and also states that money earned from certain non-Ochsner work accrues to Defendants. Professional Service Agreement § 2.1-2.3. The Professional Services Agreement also allows for termination for cause based on a material breach of the agreement, if Defendants provide "written notice ... specifying in detail the nature of the alleged material breach" and Plaintiff fails to cure the breach within twenty days. Professional Service Agreement § 12.1(e). Defendants did not cite this non-Ochsner work as a cause for breach when it terminated Plaintiff in 2009. Although it does not appear to be disputed that Plaintiff performed the non-Ochsner work, Plaintiff has testified that he discontinued that work promptly upon written notice by Ochsner of the nature of the breach. The written notice of the breach required Plaintiff to discontinue that work, but did not demand payment of any money earned by Plaintiff for that work. Accordingly, whether the work

constituted a material breach warranting dissolution of the employment agreement or whether or to what extent Defendants are entitled to damages is subject to questions of fact.

## IV.   CONCLUSION

For the foregoing reasons,

IT IS ORDERED that Defendants' motion for summary judgment (Rec. Doc. 29) is GRANTED IN PART AND DENIED IN PART.  The motion is granted with respect to Plaintiff's claims and denied with respect to Defendants' counter-claims.

New Orleans, Louisiana, this 30th day of June, 2011.

_____
UNITED STATES DISTRICT JUDGE